UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ANTHONY GRAZIANO and JOANNE GRAZIANO,

25 Civ. 02943 (NGG) (JRC)

*Plaintiffs,*

– against –

MB LIC MOTORS LLC d/b/aEMPIRE CADILLAC andGM FINANCIAL,

*Defendants.*
-----------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT AMERICREDIT FINANCIAL SERVICES, INC. D/B/A GM FINANCIAL'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

David M. Kasell, Esq.
Attorneys for Plaintiffs
1038 Jackson Avenue, Suite #4
Long Island City, New York 11101

**TABLE OF CONTENTS**

**I. SUMMARY OF THE ARGUMENT .......... 1**

**II. STATEMENT OF FACTS AND PROCEDURAL HISTORY .......... 2**

A. The Transaction .......... 2

B. Procedural History .......... 4

**III. LEGAL STANDARD .......... 5**

**IV. ARGUMENT .......... 6**

A. The Settlement With Empire Cadillac Does Not Extinguish Plaintiffs' Claims Against GM Financial .......... 6

B. The Holder Rule Notice in the Contract, and Personal Property Law § 302(9), Sustain Count VIII .......... 7

C. The Motion Improperly Rests on Extrinsic Evidence and on the Very Document Plaintiffs Allege Was Altered .......... 8

D. Each of Plaintiffs' Causes of Action Is Adequately Pleaded .......... 9

E. In the Alternative, Any Dismissal Should Be Without Prejudice .......... 12

**V. CONCLUSION .......... 13**

## TABLE OF AUTHORITIES

### Cases

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .................... 6, 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) .................... 6

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) .................... 6

*Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49–50 (2006) .................... 13

*Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 544 (E.D.N.Y. 2006) ...... 2, 7, 9

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) .................... 6, 10

*Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) .................... 6, 10

*Foman v. Davis*, 371 U.S. 178, 182 (1962) .................... 14

*Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) ....... 6, 10

*Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (1996) .................... 14

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) .................... 14

*McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) .................... 6, 8

*Morales v. Walker Motors Sales, Inc.*, 162 F. Supp. 2d 786 (S.D. Ohio 2000) .................... 9

*Moyer v. RV World, LLC*, 2020 U.S. Dist. LEXIS 264661 (N.D. Ga. Oct. 27, 2020) .................... 7

*Nelson v. Navient Sols., LLC*, 2025 U.S. Dist. LEXIS 273123 (S.D. Iowa June 30, 2025) .......... 7

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25–26 (1995) .................... 12

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) .................... 6

*Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) .................... 11

*Phillips v. Lithia Motors, Inc.*, 2005 U.S. Dist. LEXIS 44744 (D. Or. May 25, 2005) .................... 7

*Pierre v. Planet Automotive, Inc.*, 193 F. Supp. 3d 157 (E.D.N.Y. 2016) .................... 2, 9, 11

*Ramadan v. Chase Manhattan Corp.*, 229 F.3d 194, 197–98 (3d Cir. 2000)............................... 11

*Suzy Phillips Originals, Inc. v. Coville, Inc.*, 939 F. Supp. 1012, 1017 & n.2 (E.D.N.Y. 1996) ........................................................................................................................ 13

**Statutes**

15 U.S.C. § 1641(a) ............................................................................................... 10, 11

N.Y. Gen. Bus. Law § 349............................................................................................ 4, 11

N.Y. Gen. Bus. Law § 350............................................................................................ 4, 11

N.Y. Pers. Prop. Law § 302(9)......................................................................................... 1, 9

N.Y. U.C.C. § 2-102 ....................................................................................................... 13

N.Y. U.C.C. § 2-301 ......................................................................................................... 4

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................ 1, 2, 5

Fed. R. Civ. P. 15(a)(2)..................................................................................................... 14

Fed. R. Civ. P. 8(c) ........................................................................................................ 6, 8

Fed. R. Civ. P. 9(b) ...................................................................................................... 11, 12

Local Civil Rule 7.1(c) ..................................................................................................... 16

N.Y. C.P.L.R. § 3016(b) .................................................................................................. 12

**Regulations**

16 C.F.R. § 433.2 .......................................................................................................... 1, 8

Plaintiffs Anthony Graziano and Joanne Graziano ("Plaintiffs") respectfully submit this memorandum of law in opposition to the motion of Defendant AmeriCredit Financial Services, Inc. d/b/a GM Financial ("GM Financial") to dismiss the Second Amended Complaint (ECF No. 23, the "SAC") pursuant to Fed. R. Civ. P. 12(b)(6).

## I. SUMMARY OF THE ARGUMENT

GM Financial is the holder of the retail installment sales contract by which Empire Cadillac sold Plaintiffs the vehicle at issue. SAC ¶¶9, 43. The contract that GM Financial itself places before the Court contains, in bold capital letters, the notice required by the Federal Trade Commission's Holder Rule: "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF." Wilson Decl., Ex. A at 4; *see* SAC ¶42; 16 C.F.R. § 433.2. By the plain terms of the contract it holds, and independently under N.Y. Personal Property Law § 302(9), GM Financial stands in Empire Cadillac's shoes with respect to the claims arising from this transaction. SAC ¶¶43, 46.

GM Financial's motion rests on a single false premise: that because Plaintiffs settled with Empire Cadillac, Empire Cadillac's liability has somehow been adjudicated out of existence. It has not. Every case GM Financial cites for its "derivative dismissal" theory involved underlying claims that failed *on the merits*. Here, by contrast, the claims against Empire Cadillac were resolved by a negotiated settlement reached at a court-supervised settlement conference that GM Financial did not even attend (Minute Entry, Mar. 10, 2026), and the so-ordered stipulation of dismissal GM Financial itself quotes provides that the action was discontinued as against Empire Cadillac "**only**." (ECF No. 42). A settlement is not an adjudication of non-liability, and the effect

of any release is an affirmative defense that depends on the terms of a settlement agreement that is not properly before the Court on a motion under Rule 12(b)(6).

Indeed, GM Financial's own authorities defeat its motion. In *Pierre v. Planet Automotive, Inc.*, 193 F. Supp. 3d 157 (E.D.N.Y. 2016), which GM Financial cites repeatedly, the court *denied* the assignee finance company's motion on the consumer's state-law claims, holding that under the Holder Rule and Personal Property Law § 302(9) the assignee "may be held liable for Plaintiff['s] fraud and false advertising claims based on fraud and false advertising allegedly committed by" the dealership. *Id.* at 176. So too *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 544 (E.D.N.Y. 2006), which held that a vehicle financer could be liable as assignee for the dealership's deceptive sales practices.

The balance of the motion fares no better. It asks the Court to resolve disputed facts on the basis of the very contract Plaintiffs allege was materially altered, SAC ¶14; it applies a heightened pleading standard to the General Business Law claims that the Second Circuit has squarely rejected; it invokes a state procedural rule that does not apply in federal court; it answers a conversion claim about Joanne Graziano's *trade-in* vehicle by pointing to a repossession clause governing the *financed* vehicle; and it declares UCC Article 2 inapplicable to consumer sales: a proposition that is simply not the law. The motion should be denied. In the alternative, any dismissal should be without prejudice and with leave to replead.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. The Transaction

On or about April 19, 2025, Anthony Graziano visited Empire Cadillac's dealership to *lease* a 2024 GMC Hummer EV SUV. SAC ¶10. Contrary to the representations Empire Cadillac made in its advertising and during the parties' initial discussions, the vehicle had approximately

20,000 miles on it. *Id.* And although Anthony Graziano had received prior approval for a lease, Empire Cadillac represented that he would instead have to purchase the vehicle through a retail installment contract. SAC ¶11.

Empire Cadillac "assured Plaintiffs that the monthly payment of $1,931.00 reflected all applicable financing terms and included the full value and negative equity of Joanne Graziano's 2024 Jeep Wrangler, which was being trad[ed] in." SAC ¶12. Relying on those assurances, and under time pressure, Plaintiffs executed a retail installment sales contract (the "RISC," which GM Financial's motion calls the "RIC"). SAC ¶13. "Unbeknownst to Plaintiffs, Empire Cadillac later transmitted a materially altered version of the RISC to the lender. This altered document omitted the trade-in vehicle and bore only an electronic signature." SAC ¶14. Empire Cadillac then failed to pay off the outstanding lien on the Jeep Wrangler, and Joanne Graziano, the obligor on that vehicle, suffered substantial credit damage. SAC ¶15. Empire Cadillac misrepresented the transaction both to Plaintiffs and to the lender, SAC ¶16, and refused Plaintiffs' attempts to resolve the matter informally, SAC ¶17.

The exhibit GM Financial submits with its motion corroborates these allegations on its face: it is an electronically signed contract that reflects no trade-in whatsoever and a monthly payment of $1,958.26: not the $1,931.00 payment Plaintiffs were promised, and not the trade-in terms Plaintiffs were assured were included. Wilson Decl., Ex. A at 1–2; *compare* SAC ¶¶12, 14.

The SAC pleads seven causes of action against Empire Cadillac arising from this conduct: violation of the Truth in Lending Act ("TILA") and Regulation Z (SAC ¶¶18–20); deceptive practices under GBL § 349 (SAC ¶¶21–23); false advertising under GBL § 350 (SAC ¶¶24–26); common-law fraud (SAC ¶¶27–30); conversion (SAC ¶¶31–33); breach of contract under UCC § 2-301 *et seq.* (SAC ¶¶34–36); and negligent misrepresentation (SAC ¶¶37–39). It also pleads an

eighth count against GM Financial only, alleging that GM Financial is the holder of the RISC, is bound by the Holder Rule notice quoted in the contract, and is accordingly subject to all claims and defenses Plaintiffs could assert against Empire Cadillac. SAC ¶¶40–46.

### B. Procedural History

Plaintiffs commenced this action against Empire Cadillac on May 27, 2025. (ECF No. 1). Empire Cadillac answered on August 29, 2025. (ECF No. 13). On November 10, 2025, within the deadline for joinder set at the initial conference, Plaintiffs filed an Amended Complaint joining GM Financial as a defendant (ECF No. 16), and GM Financial was served on December 4, 2025. (ECF No. 22). At a hearing on January 7, 2026, Magistrate Judge Cho granted Plaintiffs' request to file a second amended complaint (Minute Entry, Jan. 7, 2026), and Plaintiffs filed the SAC on January 19, 2026. (ECF No. 23).

On March 10, 2026, Magistrate Judge Cho convened an in-person settlement conference. GM Financial did not appear. The case settled "as to defendant MBLIC Motors LLC only." (Minute Entry, Mar. 10, 2026). Plaintiffs' ensuing status report advised the Court that the settlement release had *not* been agreed to, attaching a redline of the disputed release. (ECF No. 31). The parties' first draft stipulation of dismissal, captioned as to "MB LIC LLC only" (ECF No. 32), was stricken by Judge Garaufis, who directed submission of a final version. (Order, Apr. 9, 2026).

GM Financial was served with the SAC on April 24, 2026 (ECF No. 34), obtained an extension to respond (Order, May 13, 2026), and sought a pre-motion conference on its anticipated motion to dismiss (ECF No. 37), which Plaintiffs opposed (ECF No. 38). At the July 10, 2026, pre-motion conference, the Court directed Empire Cadillac to file its final stipulation of dismissal and set the briefing schedule for this motion. (Minute Entry, July 10, 2026). Empire Cadillac filed

its stipulation on July 17, 2026 (ECF No. 41), and on July 20, 2026, the Court so-ordered the stipulation dismissing the action "with prejudice, and without attorneys' fees against [Empire Cadillac], **only**." (ECF No. 42). GM Financial was not a party to the settlement or the stipulation, and no court has ever passed on the merits of any of Plaintiffs' claims.

## III. LEGAL STANDARD

On a motion under Rule 12(b)(6), the Court accepts all well-pleaded factual allegations as true and draws every reasonable inference in the plaintiff's favor, asking only whether the complaint states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

The review is confined to the four corners of the complaint. Material outside the pleading may be considered only in narrow circumstances: "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). It is error to resolve a Rule 12(b)(6) motion on extrinsic factual submissions. *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (vacating dismissal that rested on materials outside the complaint).

Likewise, an affirmative defense, including release and settlement under Fed. R. Civ. P. 8(c), may be raised on a motion to dismiss only "if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998); *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

## IV. ARGUMENT

### A. The Settlement With Empire Cadillac Does Not Extinguish Plaintiffs' Claims Against GM Financial

GM Financial's lead argument, that the dismissal of Empire Cadillac "necessarily extinguishes" the claim against the holder, conflates two very different things: a judicial determination that the seller was never liable, and a private settlement resolving the seller's liability between the settling parties. Every authority GM Financial marshals involved the former. In *Diaz*, 424 F. Supp. 2d at 544, the claims against the creditor failed only because the corresponding claims against the dealership had failed *as a matter of law*. In *Moyer v. RV World, LLC*, 2020 U.S. Dist. LEXIS 264661 (N.D. Ga. Oct. 27, 2020), and *Phillips v. Lithia Motors, Inc.*, 2005 U.S. Dist. LEXIS 44744 (D. Or. May 25, 2005), the underlying claims were *dismissed on their merits*, so there was nothing left to preserve against the assignee. And *Nelson v. Navient Sols., LLC*, 2025 U.S. Dist. LEXIS 273123 (S.D. Iowa June 30, 2025), by GM Financial's own description, holds only that "a viable underlying claim against the original seller must exist" (GM Mem. at 5), which is precisely what Plaintiffs have pleaded here.

None of those cases holds, and GM Financial cites no case holding, that a consumer who settles with the seller thereby forfeits the claims the Holder Rule notice preserves against the holder. That is unsurprising, because a voluntary dismissal pursuant to a settlement is not an adjudication that the seller did nothing wrong; it is a compromise. The well-pleaded allegations of Empire Cadillac's misconduct remain exactly that: well-pleaded allegations that the Court must accept as true on this motion. *Iqbal*, 556 U.S. at 678.

The record refutes GM Financial's reading twice over. The settlement was reached at a court-supervised conference that GM Financial did not attend, and the Court's own minute entry records that the case settled "as to defendant MBLIC Motors LLC **only**." (Minute Entry, Mar. 10,

2026). The so-ordered stipulation likewise dismisses the action "against [Empire Cadillac], **only**." (ECF No. 42). That language has an evident purpose: to preserve the claims against the remaining defendant. If the settling parties had intended to release GM Financial, the word "only" would not be there.

Whether the settlement agreement nonetheless has some preclusive or releasing effect as to GM Financial is a question about the *terms of the release*: a classic affirmative defense under Rule 8(c) that does not appear on the face of the SAC (which predates the settlement by months) and therefore cannot be resolved on this motion. *McKenna*, 386 F.3d at 436. Nor could it be: the only settlement papers on the docket are a status report advising the Court that the release was *not agreed to*, with a redline of the disputed release attached (ECF No. 31), which GM Financial itself calls a "purported redlined copy" (GM Mem. at 3). A contested draft of a third-party release is not a basis for dismissing a pleading.

At most, the settlement raises a question of setoff. The Holder Rule notice caps Plaintiffs' recovery from the holder at "amounts paid by the debtor hereunder," Wilson Decl., Ex. A at 4, and any amounts recovered from Empire Cadillac may reduce what Plaintiffs may recover from GM Financial. That is a damages issue for a later day, not a ground for dismissal today.

### B. The Holder Rule Notice in the Contract, and Personal Property Law § 302(9), Sustain Count VIII

GM Financial's assertion that "no standalone private right of action exists under the Holder Rule" attacks an argument Plaintiffs do not make. Plaintiffs do not sue under the FTC Act. Count VIII rests on the notice that 16 C.F.R. § 433.2 requires to be, and which in fact is, printed in the RISC itself. SAC ¶¶42–43. That notice is a term of the contract GM Financial holds, and it subjects the holder, by contract, to "all claims and defenses which the debtor could assert against the seller."

Wilson Decl., Ex. A at 4. The out-of-circuit and bankruptcy-court decisions GM Financial collects, *Morales v. Walker Motors Sales, Inc.*, 162 F. Supp. 2d 786 (S.D. Ohio 2000) and its progeny, address attempts to enforce the FTC's rule directly as federal law. They say nothing about the consumer's right, recognized in this District, to assert seller-based claims against the holder through the contractual notice.

That right is confirmed twice over in this District: in the very cases GM Financial cites. *Pierre*, 193 F. Supp. 3d at 176–77 (assignee finance company "may be held liable" for the dealer's fraud and false advertising under the Holder Rule and Personal Property Law § 302(9); summary judgment denied); *Diaz*, 424 F. Supp. 2d at 544 (financer could be liable as assignee for dealership's deceptive practices). And New York law supplies an independent statutory basis that GM Financial's motion never mentions: Personal Property Law § 302(9) makes the assignee of a retail installment contract subject to the buyer's claims and defenses arising from the sale. *Pierre*, 193 F. Supp. 3d at 176.

Finally, GM Financial's reliance on the "timing" principle, that an assignee takes subject to liabilities of the assignor existing before the assignment, only underscores the point. The misconduct alleged here occurred at and immediately after the formation of the RISC on April 19, 2025, before and in connection with the contract's transmission to the lender. SAC ¶¶10–16. Whatever claims arose from that misconduct traveled with the paper to GM Financial.

### C. The Motion Improperly Rests on Extrinsic Evidence and on the Very Document Plaintiffs Allege Was Altered

GM Financial builds its motion on the Wilson Declaration and the contract attached to it, and repeatedly asks the Court to treat that document's contents as established fact: that there was no trade-in, that no term was breached, that any repossession was authorized. But the heart of this

case is Plaintiffs' allegation that Empire Cadillac "transmitted a materially altered version of the RISC to the lender," a version that "omitted the trade-in vehicle and bore only an electronic signature." SAC ¶14. The electronically signed, no-trade-in document GM Financial proffers matches that description. Wilson Decl., Ex. A. Where, as here, the accuracy of the proffered document is the disputed issue, the document may not be used to trump the complaint's allegations on a motion to dismiss. *DiFolco*, 622 F.3d at 111; *Faulkner*, 463 F.3d at 134. The document's silence about a trade-in is not proof that there was none; on Plaintiffs' allegations, it is evidence of the alteration itself. And the Wilson Declaration, a factual affidavit from GM Financial's Vice President of "Loss Recovery," is precisely the kind of extrinsic material that has no place at the pleading stage. *Global Network*, 458 F.3d at 156.

### D. Each of Plaintiffs' Causes of Action Is Adequately Pleaded

**TILA (Count I).** GM Financial argues that assignee liability under TILA is limited to violations "apparent on the face" of the disclosure statement. The statute's test is broader than GM Financial lets on: a violation is apparent on the face of the disclosure statement where "the disclosure can be determined to be incomplete or inaccurate from the face of the disclosure statement *or other documents assigned*." 15 U.S.C. § 1641(a) (emphasis added). The SAC alleges that the disclosures failed to state the accurate amount financed, the proper total sale price, and the trade-in value and its associated negative equity. SAC ¶19. A trade-in was part of this transaction, SAC ¶12, yet the itemization discloses none; whether that incompleteness was determinable from the face of the disclosures and the deal documents assigned to GM Financial (including the original executed RISC that allegedly did reflect the trade-in, SAC ¶¶13–14) is a factual question about what was in the assigned file, not a question that can be resolved against Plaintiffs on the pleadings. Moreover, even accepted at full strength, § 1641(a) limits assignee liability *for TILA claims only*.

*Ramadan v. Chase Manhattan Corp.*, 229 F.3d 194, 197–98 (3d Cir. 2000). It does not touch Counts II through VII, as *Pierre* squarely holds. 193 F. Supp. 3d at 175–77.

**GBL §§ 349 and 350 (Counts II–III).** GM Financial insists that "specificity is required" for claims under General Business Law § 349 and § 350. The Second Circuit has held the opposite: because such claims do not require proof of the elements of common-law fraud, they are not subject to Rule 9(b) and "need only meet the bare-bones notice-pleading requirements of Rule 8(a)." *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005). The SAC alleges consumer-oriented conduct: the advertising and retail sale of an automobile to the public through standardized dealer practices, SAC ¶¶7, 10, 22, 25; materially misleading representations concerning the vehicle's mileage, the monthly payment, and the trade-in and financing terms, SAC ¶¶10, 12, 22; and resulting injury in the form of pecuniary and reputational harm, including the credit damage Joanne Graziano suffered when the trade-in lien went unpaid, SAC ¶¶15, 23. Nothing more is required. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25–26 (1995).

**Common-law fraud (Count IV).** GM Financial measures the fraud count against CPLR § 3016(b), a New York procedural rule that has no application in this Court; Rule 9(b) governs. And under Rule 9(b), the SAC must be read as a whole. It identifies the speaker (Empire Cadillac, in its advertising and at its dealership), the date and place (the April 19, 2025, transaction at Empire Cadillac), the specific false statements (that the vehicle conformed to its advertising when it had approximately 20,000 miles; that the $1,931.00 monthly payment included the full value and negative equity of the Jeep Wrangler trade-in), the deceptive conduct (transmitting a materially altered RISC to the lender that omitted the trade-in), and the resulting harm (an inflated obligation,

the loss of the trade-in, and credit damage). SAC ¶¶10–16, 28–29. That is the who, what, when, where, and how that Rule 9(b) requires.

**Conversion (Count V).** GM Financial's response to the conversion count answers a claim Plaintiffs never pleaded. The SAC alleges conversion of the *trade-in vehicle*, Joanne Graziano's 2024 Jeep Wrangler: Empire Cadillac accepted it, failed to satisfy the lien on it, and it was unlawfully repossessed and sold. SAC ¶¶12, 15, 32. The RISC's repossession clause, "[i]f you default, we may take (repossess) the vehicle," concerns the financed Hummer, not the Jeep, and is therefore beside the point; no default by Plaintiffs is alleged anywhere, and nothing authorized anyone to take the trade-in. The elements of conversion (the plaintiff's possessory right or interest in the property, and the defendant's dominion over the property or interference with it in derogation of the plaintiff's rights) are pleaded. *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49–50 (2006). Nor is the claim "outside the scope" of the Holder Rule: the trade-in was tendered as part of the consideration for the very sale the RISC financed, SAC ¶12, a claim arising from the "goods or services obtained pursuant" to the contract, in the words of the notice itself. Wilson Decl., Ex. A at 4.

**Breach of contract / UCC (Count VI).** GM Financial's argument that Plaintiffs "cannot sustain a breach-of-contract claim premised on a non-existent term" is circular: it assumes the version of the RISC it holds accurately memorializes the parties' bargain, which is exactly what Plaintiffs dispute. SAC ¶¶13–14. The SAC alleges that the agreed exchange included the trade-in and that Empire Cadillac "materially breached the agreement by failing to account for the trade-in and failing to tender proper performance." SAC ¶35. GM Financial's further assertion that UCC Article 2 "is inapplicable because this is a consumer transaction and not a transaction between merchants" misstates the law. Article 2 applies to "transactions in goods," N.Y. U.C.C. § 2-102,

and a retail automobile sale is a transaction in goods; only discrete provisions of Article 2 impose special rules "between merchants." The sole case GM Financial cites, *Suzy Phillips Originals, Inc. v. Coville, Inc.*, 939 F. Supp. 1012, 1017 & n.2 (E.D.N.Y. 1996), was a battle-of-the-forms dispute in which both parties *were* merchants; it did not hold, and could not have held, that consumers cannot invoke Article 2.

**Negligent misrepresentation (Count VII).** The SAC alleges that Empire Cadillac owed Plaintiffs a duty to act with reasonable care in representing the material terms of the transaction and breached that duty, causing foreseeable harm. SAC ¶38. Whether a special relationship imposing such a duty existed is a fact-intensive question: as New York's Court of Appeals has explained, "[w]hether the nature and caliber of the relationship between the parties is such that the injured party's reliance on a negligent misrepresentation is justified generally raises an issue of fact." *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (1996). GM Financial's ipse dixit that Plaintiffs "cannot" plead such a relationship is not a basis for dismissal.

### E. In the Alternative, Any Dismissal Should Be Without Prejudice

GM Financial's request for dismissal *with prejudice* is unsupported. Leave to amend is to be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962), and the Second Circuit has cautioned that "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). Plaintiffs' prior amendments were made to join GM Financial (ECF No. 16) and with leave of court (Minute Entry, Jan. 7, 2026), not in response to any judicial ruling identifying pleading deficiencies, for no court has issued one. If the Court concludes that any count is insufficiently pleaded, Plaintiffs respectfully request leave to replead.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny GM Financial's motion to dismiss the Second Amended Complaint in its entirety, together with such other and further relief as the Court deems just and proper; in the alternative, Plaintiffs request leave to replead any count the Court finds deficient.

Dated: August 14, 2026
Long Island City, New York

**Kasell Law Firm**

By: /s/ *David M. Kasell*
David M. Kasell
*Attorneys for Plaintiffs*
1038 Jackson Avenue, Suite #4
Long Island City, New York 11101
Office: (718) 404-6668
Email: david@kaselllawfirm.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ANTHONY GRAZIANO andJOANNE GRAZIANO,

25 Civ. 02943 (NGG) (JRC)

*Plaintiffs,*

– against –

MB LIC MOTORS LLC d/b/aEMPIRE CADILLAC andGM FINANCIAL,

*Defendants.*
-----------------------------------------------------------------X

**CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1(c)**

Pursuant to Rule 7.1(c) of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, the undersigned counsel for Plaintiffs hereby certifies that the foregoing Memorandum of Law in Opposition to Defendant GM Financial's Motion to Dismiss the Second Amended Complaint complies with the word-count limitation set forth in Local Civil Rule 7.1(c).

As measured by the word-count function of the word-processing program used to prepare it, the Memorandum of Law contains 4,037 words, exclusive of the caption, table of contents, table of authorities, and signature block. The Memorandum therefore does not exceed the 8,750-word limit prescribed by Local Civil Rule 7.1(c).

Dated: August 14, 2026
Long Island City, New York

**Kasell Law Firm**

By: /s/ David M. Kasell
David M. Kasell
*Attorneys for Plaintiffs*
1038 Jackson Avenue, Suite #4

Long Island City, New York 11101
Office: (718) 404-6668
Email: david@kaselllawfirm.com