**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTHONY GRAZIANO and JOANNE GRAZIANO,<br><br>Plaintiffs,<br><br>vs.<br><br>MB LIC MOTORS LLC d/b/a EMPIRE CADILLAC and GM FINANCIAL,<br><br>Defendants. | Civil Action No. 1:25-cv-02943-NGG-JRC |

# DEFENDANT AMERICREDIT FINANCIAL SERVICES, INC. D/B/A GM FINANCIAL'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

**REED SMITH LLP**
*Formed in the State of Delaware*
Diane A. Bettino, Esq.
David G. Murphy, Esq.
599 Lexington Avenue, 22nd Floor
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450
dmurphy@reedsmith.com

*Attorneys for Defendant AmeriCredit Financial Services, Inc. d/b/a GM Financial*

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ....................1

ARGUMENT IN REPLY ....................2

I. PLAINTIFFS' DISMISSAL OF EMPIRE CADILLAC NECESSARILY EXTINGUISHES PLAINTIFFS' DERIVATIVE HOLDER RULE CLAIM AGAINST GM FINANCIAL ....................2

II. PLAINTIFFS' INDIVIDUAL CLAIMS FAIL AGAINST GM FINANCIAL REGARDLESS OF WHETHER THE HOLDER RULE APPLIES ....................4

A. Plaintiffs' TILA Claim Fails [Count I] ....................4

B. Plaintiffs Fail to Plead the *Prima Facie* Elements of Causes of Action Under GBL §§ 349 and 350 [Counts II–III] ....................5

C. Plaintiffs' Common Law Fraud Claim Fails [Count IV] ....................5

D. Plaintiffs' Fail to State a Claim for Conversion Against GM Financial [Count V] ....................6

E. Plaintiffs' Breach of Contract / UCC § 2-301, *et seq.* Claim Fails [Count VI] ....................7

F. The Negligent Misrepresentation Claim Fails as a Matter of Law [Count VII] ....................8

CONCLUSION ....................8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almeida v. United States HUD*,
2009 U.S. Dist. LEXIS 32617, at *6 (S.D.N.Y. Feb. 11, 2009) ............ 8

*McGovern v. T.J. Best Bldg. & Remodeling, Inc.*,
245 A.D.2d 925 (3d Dep't 1997) ............ 5

*Moyer v. RV World, LLC*,
2020 U.S. Dist. LEXIS 264661 (N.D. Ga. Oct. 27, 2020) ............ 3

*Pierre v. Planet Auto., Inc.*,
193 F. Supp. 3d 157 (E.D.N.Y. 2016) ............ 3

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
531 U.S. 497 (2001) ............ 2

**Statutes**

15 U.S.C. § 1638 ............ 4

15 U.S.C. § 1640(a) ............ 4

N.Y. Gen. Oblig. Law § 13-105 ............ 6

N.Y. Personal Property Law § 302(9) ............ 2, 3

**Rules**

Fed R. Civ. P. 9(b) ............ 5

Fed. R. Civ. P. 12(b)(6) ............ 1, 2

**Regulations**

12 C.F.R. § 1026.18 ............ 4

16 C.F.R. § 433.2 ............ 2, 6

## PRELIMINARY STATEMENT

Defendant AmeriCredit Financial Services, Inc. d/b/a GM Financial ("GM Financial") submits this Reply Memorandum of Law in further support of its Motion to Dismiss the Second Amended Complaint ("Complaint") filed by Plaintiffs Anthony Graziano and Joanne Graziano (collectively, "Plaintiffs") pursuant to *Fed. R. Civ. P.* 12(b)(6).

Plaintiffs' opposition confirms that they cannot sustain any viable claim against GM Financial, and that dismissal with prejudice is warranted. Plaintiffs fail to identify any legal basis to hold GM Financial liable following the complete dismissal of all claims asserted against the seller, Defendant MB LIC Motors LLC d/b/a Empire Cadillac ("Empire Cadillac"), with prejudice. Tellingly, Plaintiffs do not address GM Financial's arguments head-on. Rather, they argue that GM Financial was not a releasee to the settlement with Empire Cadillac (in response to an argument that GM Financial did not make and premised on a disingenuous recitation of the procedural history in this matter), rely on New York's analog to the FTC Holder Rule (even though they did not plead it), and illustrate empty distinguishments with GM Financial's cited authorities, all while failing to cite a single case that supports their position. The crux of Plaintiffs' opposition is a fundamental misunderstanding of the derivative nature of the FTC Holder Rule and, at bottom, Plaintiff voluntarily extinguishing Empire Cadillac's liability precludes Plaintiff's subsequent enforcement of the Holder Rule (and its New York analog) against GM Financial.

Even beyond the defects with Plaintiffs' reliance on the Holder Rule, Plaintiffs fail to meaningfully defend their claims on the merits. With respect to their defective TILA claim, Plaintiffs offer no authority or basis for sustaining their claim beyond the clear limitations on assignee liability for alleged TILA violations. Plaintiffs rely on their barebones allegation that a different version of the RIC exists (which was apparently not assigned to GM Financial), though they have not attached it to any of their pleadings, despite the fact that it is apparently an integral,

controlling agreement between the parties that forms the basis for all of Plaintiffs' claims. Beyond TILA, each of Plaintiffs' New York state law claims remain insufficiently pleaded, and nothing in Plaintiffs' opposition alleviates the flaws in each under-pleaded cause of action.

For the foregoing reasons, as well as those set forth in GM Financial's opening brief, GM Financial's motion to dismiss the Complaint pursuant to *Rule* 12(b)(6), with prejudice, should be granted in its entirety.

## ARGUMENT IN REPLY

### I. PLAINTIFFS' DISMISSAL OF EMPIRE CADILLAC NECESSARILY EXTINGUISHES PLAINTIFFS' DERIVATIVE HOLDER RULE CLAIM AGAINST GM FINANCIAL

As set forth in GM Financial's opening brief, Plaintiffs extinguishing all liability against Empire Cadillac necessarily requires dismissal of all derivative claims against GM Financial. In their opposition, Plaintiffs attempt to distinguish the cases cited in GM Financial's opening brief by asserting that those cases involved "merits" dismissals, whereas this case involved a "settlement" that did not involve GM Financial.[1] Plaintiffs' contention is meritless and non-responsive. GM Financial is not arguing that it was a releasee under the settlement; as a matter of law, Plaintiff's relinquishment of claims against Empire Cadillac precludes Holder Rule liability.

As set forth in GM Financial's opening brief, the Holder Rule does not create independent liability; it merely preserves claims and defenses that the debtor "could assert against the seller." 16 C.F.R. § 433.2; *see also* N.Y. Pers. Prop. Law § 302(9). After the dismissal of Empire Cadillac,

[1] Throughout their opposition, Plaintiffs repeatedly assert that GM Financial did not attend the March 10, 2026 settlement conference between Plaintiffs and Empire Cadillac, wrongly suggesting that GM Financial refused or neglected to appear for a mandated conference. The Court should reject Plaintiffs' disingenuous assertion—Plaintiffs did not properly serve GM Financial in this matter, as its proofs of service (*DE* 22, 34) show it attempted to serve their pleadings on CT Corp., which Plaintiffs knew is not GM Financial's registered agent for service of process. Plaintiffs did not attempt to serve GM Financial with the operative pleading in this matter until April 24, 2026, and it was not actually joined as a party in this litigation until it voluntarily appeared, though counsel, in May 2026.

with prejudice, Plaintiffs can no longer assert any claims against Empire Cadillac. And, as a matter of law, a "with prejudice" dismissal is an adjudication on the merits. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) ("The primary meaning of 'dismissal with prejudice' ... is dismissal with a preclusive effect.").

Moreover, Plaintiffs' argument that the release is an "affirmative defense" misses the point. The issue is not whether the settlement agreement "has some preclusive or releasing effect as to GM Financial." Rather, regardless of how a claim is dismissed with prejudice against the seller, there is no claim or defense to "hold" GM Financial responsible for, thus Plaintiffs' Holder Rule claim fails as a matter of law. The Holder Rule is a shield, not a sword that creates new, independent causes of action. Once the claims against the seller are extinguished—by whatever mechanism—the derivative Holder Rule claim necessarily fails. *See Moyer v. RV World, LLC*, 2020 U.S. Dist. LEXIS 264661, at *18 (N.D. Ga. Oct. 27, 2020) ("Because [plaintiff's] only claims against Alliant are derivative of the claims against [the dealership], which are due to be dismissed, the claims against Alliant are necessarily due to be dismissed as well.").

Plaintiffs' reliance on N.Y. Personal Property Law § 302(9) as an "independent statutory basis" for liability is likewise without merit. Section 302(9), like the Holder Rule, merely preserves claims and defenses that exist against the seller, it does not create new ones. *See Pierre v. Planet Auto., Inc.*, 193 F. Supp. 3d 157, 176 (E.D.N.Y. 2016).

Simply put, Plaintiffs' sole claim asserted against GM Financial in the Complaint—a purely derivative claim—fails as a matter of law and must be dismissed. GM Financial is not named as a liable defendant in the first seven counts of the Complaint. With all claims against Empire Cadillac dismissed with prejudice, only Count VIII remains as an active claim, which is otherwise devoid of purpose. GM Financial cannot face derivative liability for Empire Cadillac's

alleged wrongdoing when no active claims against Empire Cadillac remain. Accordingly, the Complaint should be dismissed against GM Financial.

## II. PLAINTIFFS' INDIVIDUAL CLAIMS FAIL AGAINST GM FINANCIAL REGARDLESS OF WHETHER THE HOLDER RULE APPLIES

Even setting aside the limitations of seeking relief solely through the Holder Rule, in which the underlying alleged tortfeasor has been dismissed with prejudice, Plaintiffs' opposition confirms that the individual claims are insufficiently pled.

### A. Plaintiffs' TILA Claim Fails [Count I]

GM Financial, as assignee, cannot be held liable under TILA absent a clear, facial violation of TILA on the RIC itself. In the Complaint, Plaintiffs allege that "Empire Cadillac failed to disclose material terms required by 15 U.S.C. § 1638 and 12 C.F.R. § 1026.18," thereby entitling Plaintiffs to "actual and statutory damages, plus attorneys' fees and costs under 15 U.S.C. § 1640(a)." *Am. Compl.*, ⁋⁋ 19–20. Plaintiffs now argue that GM Financial should be held liable for the "incompleteness" of the RIC's disclosures regarding the trade-in. *See Pls.' Opp.*, p. 9. Plaintiffs contend that "whether that incompleteness was determinable from the face of the disclosures and the deal documents assigned to GM Financial … is a factual question about what was in the assigned file, not a question that can be resolved against Plaintiffs on the pleadings." *Id*. But this is exactly the kind of factual speculation that is insufficient at the pleading stage. Plaintiffs do not allege that a facial defect exists on the RIC itself. Instead, they contend a different version of the RIC exists (which is not attached to Plaintiff's pleadings), and the seek to engage in an unnecessary fishing expedition into unidentified "*other documents assigned.*" The Court should reject Plaintiffs' barebones claims and arguments.

Moreover, Plaintiffs' own theory—that Empire Cadillac transmitted a different document to the lender—defeats the TILA assignee-liability claim. If the trade-in was omitted from the

version transmitted to GM Financial, then by definition no facial violation would be apparent on that document. Regardless, the Complaint does not allege that the RIC itself was facially defective, with respect to the trade-in value or any other term allegedly not disclosed to Plaintiffs. Thus, the TILA claim against GM Financial is unsustainable as a matter of law.

### B. Plaintiffs Fail to Plead the *Prima Facie* Elements of Causes of Action Under GBL §§ 349 and 350 [Counts II–III]

As set forth in GM Financial's opening brief, Plaintiffs' Complaint falls well short of setting forth a viable claim under GBL §§ 349 and 350. In opposition, Plaintiffs argue that these claims need only meet "bare-bones notice-pleading requirements." *See Pls.' Opp.*, p. 10. However, even under that standard, the Complaint still fails as a matter of law because it fails to allege any "consumer-oriented" conduct by GM Financial or Empire Cadillac, identify any specific misrepresentation made by GM Financial or Empire Cadillac, or allege any direct injury caused by that alleged wrongdoing. Put simply, Plaintiffs do not (because they cannot) satisfy the necessary pleading standard to set forth a claim under GBL § 349 and § 350, thus, Counts II and III should be dismissed.

### C. Plaintiffs' Common Law Fraud Claim Fails [Count IV]

In the opposition, Plaintiffs argue that reading the Second Amended Complaint "as a whole" satisfies Rule 9(b). *Pls.' Opp.*, p. 10. But the Second Amended Complaint does not specific any fraudulent statement, omission, or conduct by any defendant. In its entirety, Plaintiffs fraud claim alleges only that "Empire Cadillac knowingly made false representations about the transaction, including omitting the trade-in in documents submitted to the lender." *Am. Compl.*, ⁋ 28. Plainly, this cursory allegation is insufficient to sustain a fraud claim. *McGovern v. T.J. Best Bldg. & Remodeling, Inc.,* 245 A.D.2d 925, 927 (3d Dep't 1997). Count IV should therefore be dismissed with prejudice.

### D. Plaintiffs' Fail to State a Claim for Conversion Against GM Financial [Count V]

Plaintiffs claim, in conclusory fashion, that "Empire Cadillac wrongfully exercised dominion and control over Plaintiffs' trade-in vehicle by accepting it and failing to satisfy the lien, resulting in its unlawful repossession and sale." *Am. Compl.*, ⁋ 32. In opposition, Plaintiffs' attempt to clarify that they are alleging conversion of the trade-in Jeep Wrangler, and that their claim has nothing to do with any of GM Financial's repossession rights. *Pls.' Opp.*, p. 11. Critically, that contention supports the conclusion that the conversion claim fails as a matter of law to the extent Plaintiffs seek liability against GM Financial.

GM Financial is not alleged to have taken possession of, exercised dominion over, or had any involvement with the Jeep Wrangler—GM Financial was never assigned any rights concerning the Jeep Wrangler and, under the RIC, never could have taken any action concerning the Jeep Wrangler. Nor could GM Financial taken any action concerning Plaintiffs' alleged financing agreement with another lender concerning the Jeep Wrangler. The Holder Rule does not create open-ended liability for a lender to be liable for *any* alleged wrongdoing by the dealership—the holder only steps into the shoes of the seller for the specific contract at issue. 16 C.F.R. § 433.2(a) (limiting scope of Holder Rule to claims against the "seller of goods or services obtained pursuant hereto or with the proceeds hereof" the RIC and limiting "[r]ecovery … [to] amounts paid by the debtor hereunder" the RIC); N.Y. Gen. Oblig. Law § 13-105 ("Where a claim or demand can be transferred, the transfer thereof passes an interest … subject to any defense or counter-claim, existing against the transferrer, before notice of the transfer….")). In other words, if GM Financial could not benefit from the Jeep Wrangler, enforce the underlying contract for the Jeep Wrangler, or dictate any terms about the Jeep Wrangler, it cannot possibly be held liable for something Empire Cadillac did with the Jeep Wrangler after Plaintiffs traded it in. Empire Cadillac's disposal

of the Jeep Wrangler falls far outside the scope of any conceivable Holder Rule liability for GM Financial. Accordingly, the conversion claim (to the extent any liability is sought against GM Financial) fails as a matter of law.

### E. Plaintiffs' Breach of Contract / UCC § 2-301, *et seq.* Claim Fails [Count VI]

Plaintiffs' opposition, in defense of its claim for breach of contract (which also incorporates a purported violation of the UCC), renders the claim even *less* coherent than what was asserted in the Second Amended Complaint. Count VI of the Second Amended Complaint alleges, in its entirety, in paragraph 39: "The RISC is a contract governed by New York's UCC. Empire Cadillac materially breached the agreement by failing to account for the trade-in and failing to tender proper performance." While this was obviously not enough to plead a viable claim, in opposition, Plaintiffs allege that the RIC that GM Financial holds is *wrong*, there is another version of the contract containing a trade-in provision that GM Financial does not have (and was not assigned), and that GM Financial can, therefore, be held liable for Empire Cadillac's breach of the other contract. *Pls.' Opp*, p. 11–12. These arguments render Plaintiffs' breach-of-contract claim even *more* defective, as they expressly argue the term they seek to enforce (the trade-in) was *not* imparted onto GM Financial.

With respect to the UCC, Plaintiffs do not attempt to explain how or why it is cited or its relevance to any cause of action (let alone a claim for breach of contract)—the Second Amended Complaint merely states that Plaintiffs seek "other appropriate relief under UCC §§ 2-301 et seq." Without authority, Plaintiff argues that provisions of Article 2 of the UCC may apply to transactions *not* involving merchants, though Plaintiffs do not cite or explain which provisions it is even seeking to enforce. In light of Plaintiffs' refusal to meaningfully engage on the UCC or attempt to explain how it could possibly support any viable cause of action, the Court should

dismiss any such claim. *Almeida v. United States HUD*, 2009 U.S. Dist. LEXIS 32617, at *6 (S.D.N.Y. Feb. 11, 2009) ("[U]ndefended claims must be dismissed.").

### F. The Negligent Misrepresentation Claim Fails as a Matter of Law [Count VII]

Finally, Plaintiffs' negligent misrepresentation claim against GM Financial is facially defective. In the opposition, Plaintiffs' assert that whether a "special relationship" existed is "fact-intensive," but the Second Amended Complaint plainly does not allege a duty of care existed separate and apart from the RIC. The absence of such a duty precludes any common-law tort liability from surviving the motion-to-dismiss stage of this litigation. As with Plaintiffs' other claims, this claim fails as a matter of law against GM Financial and should be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, and in GM Financial's opening brief, the Court should dismiss the Second Amended Complaint against GM Financial. The Second Amended Complaint should be dismissed with prejudice, because Plaintiffs have already amended their complaint twice and further amendment would be futile.

**REED SMITH LLP**

*/s/ David G. Murphy*
David G. Murphy, Esq.

Dated: August 31, 2026